# United States Court of Appeals for the Federal Circuit

2008-1267, -1376


REVOLUTION EYEWEAR, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

v.


ASPEX EYEWEAR, INC. and THIERY IFERGAN,

Defendants/Counterclaimants-
Appellees,

and

MANHATTAN DESIGN STUDIO, INC., CONTOUR OPTIK, INC.,
and ASAHI OPTICAL CO. LTD.,

Counterclaimants-Cross
Appellants.


R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, California, argued for plaintiff/counterclaim defendant-appellant.  Of counsel was Dylan C. Dang.

Michael A. Nicodema, Greenberg Traurig, LLP, of Florham Park, New Jersey, argued for defendants/counterclaimants-appellees, and counterclaimants-cross appellants.

Appealed from:  United States District Court for the Central District of California

Judge Virginia A. Phillips

# United States Court of Appeals for the Federal Circuit

2008-1267, -1376

REVOLUTION EYEWEAR, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

v.

ASPEX EYEWEAR, INC. and THIERY IFERGAN,

Defendants/Counterclaimants-
Appellees,

and

MANHATTAN DESIGN STUDIO, INC., CONTOUR OPTIK, INC.,
and ASAHI OPTICAL CO. LTD.,

Counterclaimants-Cross
Appellants.

Appeal from United States District Court for the Central District of
California in case no. 02-CV-01087, Judge Virginia A. Phillips.

_____

DECIDED:  April 29, 2009

_____

Before MICHEL, <u>Chief Judge</u>, BRYSON, and POSNER,[*] <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

---

[*]    The Honorable Richard A. Posner, Circuit Judge, United States Court of
Appeals for the Seventh Circuit, sitting by designation.

In 2002, Revolution Eyewear, Inc. ("Revolution") initiated a patent infringement action against Aspex Eyewear, Inc. ("Aspex") and Thierry Ifergan in the United States District Court for the Central District of California. Aspex, together with Contour Optik, Inc., Manhattan Design Studio, Inc., and Asahi Optical Co. Ltd. (collectively, "Contour"), counterclaimed that Revolution infringed claims 6, 22, and 34 of U.S. Patent No. RE37,545 ("'545 patent"). This appeal only relates to the counterclaim. Revolution appeals the district court's orders (1) denying Revolution's motion for summary judgment of invalidity of claim 22 of the '545 patent, (2) granting Contour's motion for summary judgment of infringement of claim 22 of the '545 patent, and (3) denying Revolution's motions for judgment as a matter of law ("JMOL"), for a new trial, or for remittitur. Contour cross-appeals the district court's order denying Contour's motion for attorney fees based on Revolution's alleged willful infringement of the '545 patent. For the reasons set forth below, we affirm.

## I. BACKGROUND

The technology in this case involves a spectacle frame that supports an auxiliary frame, enabling the user to securely fasten a second set of lenses (e.g., sunglass lenses) onto the primary frame (often holding prescription lenses). Contour is the assignee of the '545 patent, the reissue patent of U.S. Patent No. 5,568,207 ("'207 patent"). The sole inventor for both patents is Richard Chao.

According to the '545 patent, at the time of the invention, at least two deficiencies existed in conventional spectacle frames: the "stable support" issue and the "decreased strength" problem. The former refers to the fact that because the auxiliary lenses were simply attached to the frames by magnetic materials, the auxiliary lenses might easily

move downward relative to the frames and might be easily disengaged from the frames when the users conducted jogging or jumping exercises. '545 patent col.1 ll.26–32. Chao's invention addresses this issue through an auxiliary frame that may be stably supported on the primary frame, i.e., the "top-mounted" design. Id. col.2 ll.49–56. The "decreased strength" problem originated from the design of the prior art frames, in which the magnetic materials were embedded in the frames, thus requiring the excavation of four or more cavities in a frame. Id. col.1 ll.33–37. In Chao's invention, the magnetic members are supported by projections located at the rear/side portions of both the primary frame and the auxiliary frame. Id. col.2 ll.36–38, ll.43–44. Because the magnetic members are not embedded in the frames, the strength of the frames is not decreased. Id. col.3 ll.24–26.

The original '207 patent discloses an eyeglass device comprising a primary frame and an auxiliary frame. The only two claims of the '207 patent are both directed to the primary frame and auxiliary frame combination. The '545 patent has thirty-four claims. The only claim at issue, claim 22, recites:

> 22. An eyeglass device comprising:
> a primary spectacle frame for supporting primary lenses therein and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses.

'545 patent col.6 ll.46–59.

The alleged infringer, Revolution, makes and sells IMF and IMF/T magnetic clip-

on eyewear. These products include a primary frame and an auxiliary frame, with the auxiliary frame magnetically mounted at the bottom of the primary frame. Both the primary frame and the auxiliary frame include a pair of projections secured to the rear/sides of the frame. Each projection supports a magnetic member. None of the magnetic members is embedded in the frames.

## II.    PROCEDURAL HISTORY

In 1999, Aspex sued Revolution for infringement of the '207 patent. Aspex Eyewear, Inc. v. Revolution Eyewear, Inc., No. 99-CV-1623, 2001 U.S. Dist. LEXIS 25831, at *1-2 (C.D. Cal. June 4, 2001). The district court found that claim 1 of the '207 patent was directed to the "top-mounted" primary and auxiliary frame combination and that Revolution's products were in a "bottom-mounted" configuration. Id. at *5, 10. Thus, the court granted Revolution's motion for summary judgment of non-infringement. Id. at *27. This court summarily affirmed. Aspex Eyewear, Inc. v. Revolution Eyewear, Inc., 42 F. App'x 436 (Fed. Cir. 2002).

In 2002, Revolution sued Aspex for infringement of U.S. Patent No. 6,343,858 ("'858 patent"). Contour counterclaimed that Revolution infringed claims 6, 22, and 34 of the '545 patent. Later, the district court dismissed Revolution's '858 patent infringement action for lack of standing. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087 (C.D. Cal. Apr. 13, 2005). Thus, the only matter left in this lawsuit is Contour's '545 patent infringement action.

A.    Summary judgment of infringement of claim 22

Because Contour offered no opposition, the district court granted Revolution's motion for summary judgment of non-infringement as to claims 6 and 34.[1] Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087, slip op. at 6 (C.D. Cal. Aug. 7, 2003) ("SJ Order of Non-infringement of Claims 6 and 34"). The court, however, denied the motion for summary judgment of non-infringement of claim 22. Id. at 11-19.

Later, Contour filed a motion for summary judgment of infringement of claim 22. Revolution conceded in its initial brief that its primary frames included all of the elements of claim 22 except that a top-mounted auxiliary frame would not be "stably supported." However, in its supplemental brief, Revolution abandoned the argument that claim 22 included a "stable support" limitation. Therefore, the court found that Revolution's primary frames literally infringed claim 22 and granted Contour's motion. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087 (C.D. Cal. Apr. 30, 2007) ("SJ Order of Infringement of Claim 22").

B.     Summary judgment of validity of claim 22

In a separate order issued on the same day, the court denied Revolution's motion for summary judgment of invalidity of claim 22. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087 (C.D. Cal. Apr. 30, 2007) ("SJ Order of Validity"). It concluded that even though the specification of the '545 patent addressed two deficiencies in the prior art, claim 22 need not include a "stable support" limitation because the claim was directed solely to the "decreased strength" problem. Id. at 22-23. The court observed that the drawings of the '545 patent "appear[ed] to convey to a person of ordinary skill in the art the fact that the substance of claim 22 was in the

---

[1]     Both claims 6 and 34 are directed to the primary and auxiliary frame combinations.

possession of the inventor at the time he applied for the patent." Id. at 17. Similarly, it found that "a person skilled in the art would have identified the subject matter of claim 22 as having been disclosed in the '207 patent." Id. at 25-26.

The district court further entertained Revolution's argument under the recapture rule even though no claim amendments or arguments were made during the prosecution of the '207 patent. Id. at 29. The court held that Revolution failed to establish that Contour surrendered claims without a "stable support" limitation because such a limitation was directed to the auxiliary frame while claim 22 was directed to the primary frame only. Id. at 35-37.

C.    Damages and post-trial proceedings

As Revolution's infringement liability was established by the summary judgment rulings, the case proceeded to trial on the damages issue only. After a four-day trial, the jury returned a verdict, finding a royalty rate of 5% and awarding damages of $4,319,530 to Contour. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087, slip op. at 2 (C.D. Cal. Sept. 21, 2007) ("Special Verdict"). Afterwards, the district court concluded that Revolution was entitled to absolute intervening rights and reduced the damages award by $125,964. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087, slip op. at 28 (C.D. Cal. Jan. 3, 2008) ("Order on Intervening Rights"). However, the court rejected Revolution's equitable intervening rights defense. Id. at 32. Specifically, the court found that "Revolution acted with 'unclean hands' after it learned of the Court's April 30, 2007, Order Granting Summary Judgment in favor of Contour and finding that Revolution's products infringed Claim 22 of the '545 patent." Id. at 29.

On February 25, 2008, the district court issued an order granting in part Contour's motion for attorney fees. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087, slip op. at 13 (C.D. Cal. Feb. 25, 2008) ("Fees Order"). It awarded fees based on Revolution's litigation misconduct, id. at 6-13, but denied fees based on Revolution's alleged willful infringement of the '545 patent, id. at 3-6. On the same day, the court entered a final judgment, awarding Contour $4,193,567 in damages plus various interests and fees. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087, slip op. at 6 (C.D. Cal. Feb. 25, 2008). The district court later denied Revolution's motion for JMOL, for a new trial, or for remittitur. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 02-CV-01087 (C.D. Cal. Apr. 24, 2008).

Revolution appeals the issues of validity, infringement, and the denial of its post-trial motions. Contour cross-appeals the denial of attorney fees based on its argument of willful infringement. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## III. DISCUSSION

### A. Standard of review

We review a district court's grant of summary judgment de novo. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). By contrast, we give considerable deference to the trial court, and "will not disturb a trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." Little Six, Inc. v. United States, 280 F.3d 1371, 1373 (Fed. Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Thus,

summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.    Analysis

As an initial matter, we observe that the preamble of claim 22 recites "an eyeglass device" and the '545 patent describes an eyeglass device to "include[] a primary and an auxiliary spectacle frames for supporting lenses." '545 patent, Abstract (emphasis added). At the same time, the district court repeatedly stated that claim 22 was directed only to the primary frame, not the primary/auxiliary frame combination. See, e.g., SJ Order of Non-infringement of Claims 6 and 34, slip op. at 14; SJ Order of Infringement of Claim 22, slip op. at 5; SJ Order of Validity, slip op. at 25. On appeal, Revolution does not challenge this statement. In fact, Revolution concedes in its brief that "new claim 22 [is] directed to a primary frame alone instead of the combination." Therefore, we decide the case on the premise that claim 22 is directed only to the primary frame.

1.    Validity of claim 22[2]

_____

[2]    At the court's invitation, the parties presented their positions during oral argument regarding whether Revolution properly preserved the issue of validity for appeal. The district court merely denied Revolution's motion for summary judgment of invalidity of claim 22. In general, an order denying a motion for summary judgment is non-final and non-appealable. Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986). Of course, there is the exception that "[a] denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question." United Techs. Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1344 (Fed. Cir. 1999). The parties disagree on whether there is any factual issue to be tried regarding the validity of claim 22. We do not need to resolve this dispute as Contour does not raise this issue in its brief and therefore has waived this argument.

Revolution argues that claim 22 is invalid for violating: (1) the written description requirement under 35 U.S.C. § 112, ¶ 1; (2) 35 U.S.C. § 251 because it does not claim the same invention as was disclosed in the original '207 patent; and (3) the recapture rule. Under 35 U.S.C. § 282, an issued patent is presumed valid. Thus, Revolution bears the burden to prove invalidity by clear and convincing evidence. See, e.g., Univ. of Rochester v. G.D. Searle & Co., 358 F.3d 916, 920 (Fed. Cir. 2004).

a.     Written description requirement

Revolution argues that the specification of the '545 patent teaches a top-mounted combination eyewear while claim 22 broadly claims "the universe of magnetic primary frames." As such, Revolution asserts that claim 22 violates the written description requirement under § 112, ¶ 1.

When a patentee seeks reissuance of his patent, he cannot introduce any new matter into the reissue application. 35 U.S.C. § 251. Therefore, the new claims or other added material must find support in the original specification. In other words, the original specification must satisfy the written description requirement. "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not . . . ." Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003). To satisfy the written description requirement, the disclosure of the specification must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention." Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). "[U]nder proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112." Id. at 1565; see also Cooper Cameron Corp. v.

Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1322 (Fed. Cir. 2002) ("Drawings constitute an adequate description if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed.").

As explained earlier, claim 22 is directed solely to a primary frame. The district court found that figure 3 of the '545 patent, the same as figure 3 of the original '207 patent, depicted each element claimed in claim 22. Revolution does not dispute this finding. However, it argues that claim 22 does not satisfy the written description requirement because the claim does not address both of the two prior art deficiencies identified in the '207 patent. This argument is without merit.

First, we have held that when the specification sets out two different problems present in the prior art, it is unnecessary for each and every claim in the patent to address both problems. See Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1367 (Fed. Cir. 2003); Honeywell Inc. v. Victor Co. of Japan, Ltd., 298 F.3d 1317, 1326 (Fed. Cir. 2002). Revolution insists that Honeywell and Resonate are distinguishable because they are "claim construction cases" while the present case is a "written description case." We discern no meaningful distinction. Certainly, a claim construction and a written description analysis are two separate processes. However, they serve related functions in determining whether a claim is commensurate with the scope of the specification—a court looks to the specification for guidance to ascertain the scope of the claim in claim construction; it also looks to the specification to decide whether the disclosure provides adequate support for the claims in written description analysis. Therefore, contrary to Revolution's contention, the principle articulated in Honeywell and Resonate applies not only in claim construction, but also in written description analysis.

In fact, as noted by the district court, we have previously applied Honeywell and Resonate in the written description context. See Cordis Corp. v. Boston Scientific Corp., 188 F. App'x 984, 990 (Fed. Cir. 2006) ("[W]hen a patent includes two inventive components, particular claims may be directed to one of those inventive components and not to the other.").

Revolution next argues that Cordis is factually distinguishable in that the benefits of the two inventive components in the Cordis patent are not tied to each other, while the solutions to the "stable support" and "decreased strength" problems in the present case are directly related. This alleged distinction is based on the false premise that if the problems addressed by the invention are related, then a claim addressing only one of the problems is invalid for lack of sufficient written description. Inventors can frame their claims to address one problem or several, and the written description requirement will be satisfied as to each claim as long as the description conveys that the inventor was in possession of the invention recited in that claim.

In sum, as claim 22 is directed solely to a primary frame and it addresses the prior art "decreased strength" issue, we conclude that the written description requirement is satisfied.

b.    Claiming the same invention

Revolution also argues that claim 22 is invalid for violating 35 U.S.C. § 251 because it does not claim the same invention as disclosed in the original '207 patent. According to § 251, a reissue patent shall be reissued "for the invention disclosed in the original patent." The essential inquiry for the "original patent" requirement is "whether one skilled in the art, reading the specification, would identify the subject matter of the

new claims as invented and disclosed by the patentees." In re Amos, 953 F.2d 613, 618 (Fed. Cir. 1991). This inquiry is analogous to the written description requirement under § 112, ¶ 1. Id. at 617. Because we have held that the written description requirement is satisfied, we similarly hold that claim 22 complies with § 251.

c.    Recapture rule

The recapture rule is a restriction on the ability of patentees to broaden the scope of their claims through reissue patents. MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1331 (Fed. Cir. 2007). Under this rule, "'claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible.'" Id. at 1332 (quoting Hester Indus., Inc. v. Stein, Inc., 142 F.3d 1472, 1480 (Fed. Cir. 1998)). To determine whether an applicant surrendered particular subject matter, we look to the prosecution history for arguments and changes to the claims made in an effort to overcome a prior art rejection. In re Clement, 131 F.3d 1464, 1469 (Fed. Cir. 1997).

In this case, the parties do not dispute that claim 22 of the reissue '545 patent (directed to the primary frame only) is broader than the claims of the original '207 patent (directed to the primary frame and auxiliary frame combination). However, as Revolution acknowledges, no amendments or arguments were made during prosecution of the original '207 patent. In fact, the claims were allowed in the first Office Action. Therefore, the recapture rule does not apply.

Even if we considered Revolution's argument to be that Chao disclaimed certain claim scope in the specification, we would reject it. Our cases recognize that "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the

inventor. In that instance . . . the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc); see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."). Importantly, any limitation based on such disclaimer must be shown with reasonable clarity and deliberateness. Id.

The specifications of both the original '207 patent and the reissue '545 patent show two independent aspects of Chao's invention: (1) an auxiliary frame that can be top-mounted onto the primary frame to address the "stable support" issue; and (2) a primary frame with the magnetic members supported by projections attached to the rear/sides of the frame to solve the "decreased strength" problem. We agree with the district court that, in pointing out the two deficiencies in the prior art, Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration and a primary frame that has embedded magnetic members. Claim 22 is not directed to either. Instead, claim 22 is directed to the second aspect of Chao's invention. Nowhere in the specification did Chao explicitly disclaim or clearly disavow this subject matter. Therefore, we hold that Chao did not, through statements made in the specification, disclaim the subject matter of claim 22.

Claim 22 satisfies both the written description requirement under § 112, ¶ 1 and the mandate of claiming the same invention under § 251. In addition, the inventor did not disclaim the subject matter of the claim in the specification. Because the district court did not abuse its discretion, we affirm the denial of summary judgment of invalidity of claim 22.

2. Infringement of claim 22

The district court found that Revolution's primary frames literally infringe claim 22. SJ Order of Infringement of Claim 22. Literal infringement requires that the accused device literally embodies every limitation of the claim. Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1370 (Fed. Cir. 2000). Revolution appears to concede that its product included all of the limitations of claim 22. However, it contends that there is no infringement because Revolution's primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame.

Revolution's argument misses the point. Claim 22 recites "said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame." The district court construed this phrase to mean that "the first magnetic members have the ability to magnetically attract the corresponding second magnetic members of an auxiliary spectacle frame when placed above the first magnetic member, with or without actual contact." SJ Order of Non-infringement of Claims 6 and 34, slip op. at 15. The court emphasized that "the magnetic members of the primary frame need only be capable of, or 'have the ability to,' magnetically attract magnetic members on an auxiliary spectacle frame placed above the first magnetic members." Id.

Contour submitted three specially made auxiliary frames that can be top-mounted onto Revolution's primary frames. Revolution argues that the district court erred in granting summary judgment of infringement of claim 22 based on this evidence. Quoting High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551 (Fed. Cir. 1995), Revolution points out that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." Id. at 1555. This statement is certainly correct. However, the facts in High Tech are different from the ones in this case.

In High Tech, the claim at issue was directed to a hand-held endoscope for dental work, comprising a body member and a camera disposed in the body member, with the camera "being rotatably coupled to said body member." Id. at 1552. The district court found infringement because in the accused product, "the camera [was] 'rotatably coupled to the body member' when the set screws [were] loosened or removed." Id. at 1555. We reversed based on the reasoning that the accused camera "was not rotatable within its housing unless [it was] altered, at least to the extent of removing or loosening the set screws that secure the camera to the housing." Id. at 1556.

The first factual distinction between High Tech and this case is clear from the claim language. The claim in High Tech requires a structure: a camera "rotatably coupled" to a body member. In contrast, claim 22 here only requires a capacity to perform a function: "capable of engaging" magnetic members from the top. As such, we find this case similar to Intel Corp. v. United States International Trade Commission, 946 F.2d 821 (Fed. Cir. 1991).

The claim at issue in Intel is related to a memory chip. 946 F.2d at 831. It recites, inter alia, (1) "programmable selection means for selecting said alternate addressing mode," and (2) "whereby when said alternate addressing mode is selected," some signal will be processed. Id. The accused infringer conceded that its product was capable of operating in the page mode. Id. at 832. Nevertheless, it argued that the accused product did not infringe because it was "never sold to operate in page mode," and "[n]o customer was ever told how to convert the chip to page mode operation—or even that such conversion was possible." Id. The court disagreed and stated that "the accused device, to be infringing, need only be capable of operating in the page mode" and that "actual page mode operation in the accused device is not required." Id.

Just like the accused product in Intel, Revolution's primary frames, although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way—the three specially made auxiliary frames proved so. It is irrelevant that Revolution's auxiliary frames, or any other commercially available auxiliary frames, are not actually used in a top-mounting configuration or cannot be so used.

The second factual distinction between High Tech and this case is even more obvious: the camera in High Tech has to be altered for it to be "rotatably coupled" to a body member, while Revolution's primary frame does not need to be altered in any way for it to be "capable of engaging" magnetic members from the top. Revolution appears to understand this difference but nevertheless insists that Revolution's primary frame does not infringe because even though the "primary frame itself is not modified, the way it is used is certainly modified." In so arguing, Revolution ignores the fact that claim 22

is directed to the primary frame, an apparatus, not a method of using the frame. Therefore, whether the usage of the primary frame is modified is irrelevant.

Revolution goes on to argue that its primary frame does not infringe because it is not capable of stably supporting an auxiliary frame. However, Revolution has conceded that, according to the district court's claim construction, "stable support" is not a limitation of claim 22. On appeal, Revolution does not challenge any claim construction but denies that it has abandoned the "stable support" argument. We find this argument meritless. In any event, Revolution has waived the "stable support" argument.

There is no factual dispute that Revolution's primary frames, as made and sold, satisfy all the elements of claim 22. Therefore, we affirm the district court's grant of summary judgment of infringement.

3.    JMOL, new trial, or remittitur

Revolution contends that the district court erred in denying the post-trial motions for, in the alternative, JMOL, a new trial, or remittitur. We review the denial of these post-trial motions by applying the law of the regional circuit—in this case, the Ninth Circuit. See Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1148 (Fed. Cir. 2004).

a.    JMOL

In the Ninth Circuit, the court of appeals reviews a district court's denial of a motion for JMOL de novo. Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 999 (9th Cir. 2008). The test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. Id. A jury's verdict must be upheld if supported

by substantial evidence. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Substantial evidence is relevant evidence reasonable minds might accept as adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000). A court will not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists. Landes Constr. Co. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987).

At trial, Contour proposed $11 million in damages and Revolution advocated for $312,000. The jury returned a verdict awarding damages of $4.3 million to Contour. Revolution argues that JMOL is required because the jury verdict is mathematically impossible. According to Revolution, the damages would have been at most around $2.8 million, computed by multiplying the total revenue of $55 million as calculated by Contour's counsel, to the reasonable royalty rate of 5% as the jury found.

The total revenue of $55 million was calculated based on (1) the average sales prices advocated by Revolution, and (2) 70% of the total sales price of the combination eyewear as the price for the infringing primary frames. As the district court pointed out, the jury did not have to use either number in calculating the damages. Indeed, Revolution's CEO testified about two different prices for the infringing products: the list price and the much discounted average price. He also testified that the business model of Revolution "was built on selling a primary frame with an auxiliary clip-on sun lens," and not just primary frames or auxiliary frames by themselves. Construing such testimony in the light most favorable to Contour, the jury could have used the higher list

price and/or the entire price for the combination eyewear in computing the damages. The damages thus calculated would have been even more than $4.3 million.

Revolution argues that there is no substantial evidence to support even the $55 million total revenue as advocated by Contour. It attacks the testimony of Contour's witness regarding the 70% / 30% breakdown of the price for the primary frame/auxiliary frame. Revolution forgets that, at the JMOL stage, the court does not weigh evidence, and all inferences must be drawn in favor of Contour. Revolution also contends that there is no substantial evidence to support the jury's finding of the 5% royalty rate. Regarding this issue, the district court went through a detailed analysis of relevant factors under Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). We agree with the district court that the evidence is sufficient to support the 5% royalty rate. In sum, the district court did not err in denying Revolution's motion for JMOL.

b.    New trial

In the alternative, Revolution contends that the "fatal inconsistency" in the interrogatories of the Special Verdict necessitates a new trial. In the Ninth Circuit, the denial of a motion for a new trial is reviewed for an abuse of discretion. Incalza v. Fendi N. Am., Inc., 479 F.3d 1005, 1013 (9th Cir. 2007). In deciding a motion for a new trial, the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party. Landes Constr., 833 F.2d at 1371. In addition, the existence of substantial evidence does not prevent a court from granting a motion for a new trial if the verdict is against the clear weight of the evidence. Id. However, a district court may not grant or deny a new trial

merely because it would have arrived at a different verdict.  <u>Wilhelm v. Associated Container Transp. (Austl.) Ltd.</u>, 648 F.2d 1197, 1198 (9th Cir. 1981).

Revolution argues that the $4.3 million damages award exceeds the royalty for both the infringing primary frame and the non-infringing auxiliary frame.  We have already explained that the jury verdict of $4.3 million is within reason because the jury did not have to base its damages computation on the average price.  More importantly, as the district court stated, the damages award based on a reasonable royalty rate is only the floor, not the exact amount.  This rationale is well supported by the statutory language, <u>see</u> 35 U.S.C. § 284 (requiring that the court "award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty"), and our case law, <u>see, e.g.</u>, <u>Rite-Hite Corp. v. Kelley Co.</u>, 56 F.3d 1538, 1544 (Fed. Cir. 1995); <u>Del Mar Avionics, Inc. v. Quinton Instrument Co.</u>, 836 F.2d 1320, 1326 (Fed. Cir. 1987) (stating that the purpose of § 284 "is not to provide a simple accounting method, but to set a floor below which the courts are not authorized to go").  Therefore, the district court did not abuse its discretion in denying a new trial.

    c.    <u>Remittitur</u>

Revolution further asserts that the district court should have reduced the jury verdict.  A jury's supportable finding of the amount of damages must be upheld unless the amount is grossly excessive or monstrous.  <u>See</u> <u>Lambert v. Ackerley</u>, 180 F.3d 997, 1011 (9th Cir. 1999) (en banc).  A trial court's decision against remittitur is reversed only on a showing of clear abuse of discretion.  <u>See</u> <u>L.A. Police Protective League v. Gates</u>, 995 F.2d 1469, 1477 (9th Cir. 1993).

Revolution repeats the same arguments here as those for JMOL and a new trial. As discussed earlier, the verdict is supported by substantial evidence. The district court found the jury verdict of $4.3 million "well within the range of damages advocated by the parties at trial," i.e., between $312,000 as proposed by Revolution, and $11 million as proposed by Contour. Therefore, we agree with the district court that the jury verdict is not grossly excessive. Certainly, no abuse of discretion has been shown.

Accordingly, we affirm the denial of Revolution's post-trial motions for JMOL, for a new trial, or for remittitur.

4.    Attorney fees

Contour cross-appeals the district court's denial of its motion for attorney fees based on Revolution's alleged willful infringement. Section 285 authorizes the court in exceptional cases to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement. Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp., 459 F.3d 1311, 1321-22 (Fed. Cir. 2006). The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process: (1) the district court must determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, the district court must then determine in its discretion whether an award of attorney fees is justified, a determination that we review for an abuse of discretion. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366-67 (Fed. Cir. 2007).

In this case, the district court stopped its inquiry after the first step—it did not find the case exceptional because there was no sufficient evidence to support a finding of willfulness.[3] Therefore, we only need to analyze whether that fact finding was clearly erroneous. The most important fact here is that Contour failed to plead a claim for willful infringement. As a result, it was barred from seeking enhanced damages based on willful infringement, and no fact finder ever addressed the question of willfulness.

Contour bases its cross-appeal argument on a statement by the district court in the <u>Order on Intervening Rights</u>. In denying Revolution's defense of equitable intervening rights, the court articulated that Contour had shown that "Revolution ha[d] unclean hands. Revolution willfully infringed Contour's patent when it continued to sell the infringing frames after the Court granted Contour's motion for summary judgment on the issue of infringement on April 30, 2007." Contour argues that there is no distinction between "intervening rights" willfulness and "exceptional case" willfulness and therefore, the district court committed reversible error in denying the attorney fees based on willful infringement. After reviewing the record, we disagree.

First of all, as the district court correctly recognized, a limited finding of willfulness on Revolution's sales of infringing frames after the April 30, 2007 was "an insufficient basis on which to declare the entire five-year case as exceptional." More importantly, the issue of equitable intervening right is governed by 35 U.S.C. § 252, under which a court may protect investments made before reissue "to the extent and under such terms as the court deems equitable." While provided by a statutory provision, this prong of the

---

    3    The district court awarded Contour attorney fees based on Revolution's litigation misconduct. Revolution does not appeal that issue here.

intervening rights is entirely equitable in nature. As such, issues of fact underlying the equitable intervening rights are matters for court, not jury disposition. In contrast,

> [l]iability for willfulness of infringement turns on considerations of intent, state of mind, and culpability. . . .
> . . . Although fairness as between patentee and infringer is a consideration in the determination of whether illegal behavior warrants an enhanced penalty, the question does not thereby become "equitable." The issue of willful infringement remains with the trier of fact.

Nat'l Presto Indus., Inc. v. W. Bend Co., 76 F.3d 1185, 1192-93 (Fed. Cir. 1996).

In this case, Contour failed to plead willful infringement, and the fact finder did not examine the issue. This does not prohibit the court from taking into account, as dictated by the equities, facts that would normally be considered under willful infringement analysis. Indeed, the district court did so, and rightfully concluded that Revolution's conduct amounted to "unclean hands." However, as explained by the district court, such a "limited finding [of willfulness] on an equitable issue [was] not a sufficient 'clear and convincing' finding of willfulness to support finding this case 'exceptional.'" Fees Order, slip op. at 14.

There is no clear error in the court's factual failure to find willful infringement and the resulting conclusion that this is not an exceptional case. Thus, we affirm the court's denial of attorney fees based on willful infringement.

## IV.    CONCLUSION

For these reasons, the judgment of the district court is affirmed in all aspects.

## AFFIRMED